**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPORTS AUTHORITY HOLDINGS, INC., *et al.*,[1] | ) | Case No. 16-10527 (MFW) |
| | ) | |
| Debtors and Debtors In Possession. | ) | |
| | ) | |
| | ) | |
| TSA STORES, INC.; TSA PONCE, INC., and TSA CARIBE, INC., | ) | |
| | ) | |
| Plaintiffs | ) | Adversary Proceeding |
| vs. | ) | No. 16-_____  (MFW) |
| | ) | |
| T-SHIRT INTERNATIONAL, INC. d/b/a TSI SPORTSWEAR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Sports Authority Holdings, Inc., Slap Shot Holdings, Corp., The Sports Authority, Inc., TSA Stores, Inc., TSA Gift Card, Inc., TSA Ponce, Inc. and TSA Caribe, Inc. are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors").

TSA Stores, Inc., TSA Ponce, Inc. and TSA Caribe, Inc. (collectively, the "Plaintiffs"), by and through their undersigned attorneys, hereby file this Complaint pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and state as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Sports Authority Holdings, Inc. (9008); Slap Shot Holdings Corp. (8209); The Sports Authority, Inc. (2802); TSA Stores, Inc. (1120); TSA Gift Card, Inc. (1918); TSA Ponce, Inc. (4817); and TSA Caribe, Inc. (5664).  The headquarters for the above-captioned Debtors is located at 1050 West Hampden Avenue, Englewood, Colorado 80110.

## JURISDICTION AND VENUE

1.      This is an adversary proceeding brought pursuant to Bankruptcy Rule 7001.

2.      This Court has jurisdiction over the claims raised in this adversary proceeding

pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* dated as

of February 29, 2012 from the United States District Court for the District of Delaware.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) such that the Court

may enter a final order consistent with Article III of the United States Constitution.  Pursuant to

Rule 7012-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware, Plaintiffs and Debtors consent to the entry of a

final order by the Court in connection with this Complaint to the extent that it is later determined

that the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.  Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

4.      Debtor Sports Authority Holdings, Inc., a debtor and debtor in possession in the

above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), is a Delaware

corporation having its principal place of business at 2101 Grace Street, Culloden, West Virginia

25510.  Sports Authority Holdings, Inc. directly or indirectly owns all or substantially all of the

equity in each of the other Debtors.

5.      Debtor Slap Shot Holdings, Corp., a debtor and debtor in possession in the

Chapter 11 Cases, is a Delaware corporation having its principal place of business at 1050 West

Hampden Avenue, Englewood, Colorado 80110.  It is approximately 99.97% owned by Sports

Authority Holdings, Inc. and 0.03% owned by a group of former employees.  Slap Shot Holdings

Corp. is an intermediate holding company.

2

6.      Debtor The Sports Authority, Inc., a debtor and debtor in possession in the Chapter 11 Cases, is a Delaware corporation having its principal place of business at 1050 West Hampden Avenue, Englewood, Colorado 80110.  The Sports Authority, Inc. is a wholly owned subsidiary of Slap Shot Holdings Corp. and is an intermediate holding company.

7.      Plaintiff TSA Stores, Inc., a debtor and debtor in possession in the Chapter 11 Cases, is a Delaware corporation having its principal place of business at 1050 West Hampden Avenue, Englewood, Colorado 80110.  It is wholly owned by The Sports Authority, Inc. and is the primary operating entity.  TSA Corporate Services, Inc. previously was a subsidiary of TSA Stores, Inc., but it was merged into the parent in 2009.  TSA Stores, Inc. is engaged in the business of selling retail sporting goods and apparel to the general public.

8.      Debtor TSA Gift Card, Inc., a debtor and debtor in possession in the Chapter 11 Cases, is a Virginia corporation having its principal place of business at 1050 West Hampden Avenue, Englewood, Colorado 80110.  It is wholly owned by TSA Stores, Inc.  It is engaged in the business of issuing gift cards sold at stores operated by TSA Stores, Inc.

9.      Plaintiff TSA Ponce, Inc., a debtor and debtor in possession in the Chapter 11 Cases, is a Delaware corporation having its principal place of business at 1050 West Hampden Avenue, Englewood, Colorado 80110.  It is wholly owned by The Sports Authority, Inc.  It is a parent corporation of TSA Caribe, Inc.

10.      Plaintiff TSA Caribe, Inc., a debtor and debtor in possession in the Chapter 11 Cases, is a Puerto Rico corporation having its principal place of business at 1050 West Hampden Avenue, Englewood, Colorado 80110.  It is wholly owned by TSA Ponce, Inc.  It is engaged in the business of selling retail sporting goods and apparel to the general public.

3

11.     Defendant T-Shirt International, Inc. d/b/a TSI Sportswear (hereinafter the "Vendor" or "Defendant") is generally engaged in the business of distributing certain sporting goods and/or apparel to businesses for resale to the general public.  On information and belief, it is has a place of business at 824 West 18th Street, Costa Mesa, California 92627.  Vendor shipped and delivered sporting goods and/or apparel to be sold by Plaintiffs pursuant to a written agreement.

**PERTINENT FACTUAL AND LEGAL ALLEGATIONS**

12.     Debtors market and sell sporting goods and apparel to the general public, including without limitation active wear and outerwear for men, women, and children; seasonal accessories; recreational gear for a variety of outdoor activities such as camping, water sports, fishing, and hunting; gear for team sports including baseball, soccer, football, and basketball; gear for indoor exercise and fitness activities; golf gear and apparel; and select footwear, socks, insoles, and accessories.

A.      **The UCC Converts Retention Of Title In The Vendor Agreement To The Reservation Of A Security Interest.**

13.     Pursuant to a written agreement between the Vendor and Plaintiff and Debtor TSA Stores, Inc. (the "Agreement"), Vendor shipped and delivered goods (the "Goods") to the Plaintiff(s) for resale.  A true and correct copy of the Agreement is attached hereto as <u>Exhibit A</u> and incorporated herein by this reference.

14.     In this respect, the Agreement states that Defendant is the "Vendor" and that TSA Corporate Services, Inc. is the "Buyer."  (Agreement at Signature Blocks.)  TSA Corporate Services, Inc. was a subsidiary of TSA Stores, Inc. at the time the Agreement originally became effective.  TSA Corporate Services, Inc. was merged into TSA Stores, Inc. in 2009, such that Debtor and Plaintiff TSA Stores, Inc. is the surviving entity that is a party to the Agreement.  By

4

its terms, the Agreement states that it is effective from on or about the date it was executed and is to remain in effect until a new agreement is signed between the parties.  (*Id*. at 2.)

15.     Although the Agreement provides that the Vendor shall retain title to all goods, this provision in the Agreement is ineffective by operation of law under the Uniform Commercial Code ("UCC") with respect to the goods because they have been shipped and/or delivered to the Plaintiff(s).  UCC § 2-401(1) specifically provides: ***"Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."*** (Del. Code Ann. tit. 6, § 2-401 (emphasis added).)  Accordingly, UCC § 2-401 operates to ***convert*** any attempt by a seller to retain or reserve title in goods shipped or delivered into the reservation of a security interest as a matter of law.  Indeed, UCC § 2-401(1) prevents parties from contracting to control the passage of title in contravention of this provision by further providing:  "***Subject to these provisions and to the provisions of the Article on Secured Transactions (Article 9)***, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties." (*Id*. (emphasis added).)

16.     This also is expressly reflected in the definition of "security interest" in the UCC, Title 6 of the Delaware Code.  The definition states in relevant part:  "***The retention or reservation of title by a seller of goods*** notwithstanding shipment or delivery to the buyer under § 2-401 ***is limited in effect to a reservation of a 'security interest.'***"  (Del. Code Ann. tit. 6, § 1-201(35) (emphases added).)  Hence, while the Vendor professed to retain title to the goods after they were shipped or delivered to the Debtors, any rights Vendor may have are limited exclusively to reservation of a security interest in the goods as a matter of law.

**B.**     **The Vendor Did Not File A Financing Statement To Perfect Its Reservation Of A Security Interest.**

17.     The Agreement provided expressly that "Vendor shall be entitled to file UCC-1 Financing Statements" to perfect its security interest in the goods. (Agreement at 2.) The fundamental rule on the perfection of a security interest under the UCC, Title 6 of the Delaware Code, states that "*a financing statement must be filed to perfect all security interests* and agricultural liens." (Del. Code Ann. tit. 6, § 9-310(a) (emphasis added).) Thus, the Vendor was required to file a financing statement, a UCC-1, in order to perfect its security interests in the goods. The UCC, Title 6 of the Delaware Code, provides that the "location" of the debtor is the proper jurisdiction for perfection to occur here, and provides that "[a] registered organization that is organized under the law of a State is located in that State." (Del. Code Ann. tit. 6, §§ 9-301(1) and 9-307(e).)

18.     On information and belief based upon an investigation, Vendor did not at any time file a UCC-1 financing statement in the name of any of the Debtors and did not take even this most basic step to perfect a security interest in the goods although its opportunity to do so was highlighted in the Agreement. A search of financing statements filed with the Offices of the Secretary of State in Delaware, Virginia and Puerto Rico has revealed that Vendor did not file a UCC-1 financing statement in the name of any Debtor to perfect the security interest in shipped and/or delivered goods that arose by operation of law. Vendor did not do so at any time whether before or after shipping and/or delivering goods to the Debtors. Vendor did not file a UCC-1 even though it readily could have done so, and indeed was required by law to do so in order to perfect its security interest in the goods. Vendor is thus an unsecured creditor of the Debtors with regard to the goods and the resulting proceeds from sale of the goods.

C.    **Perfected Security Interests Prevail Over Unperfected Security Interests.**

19.    The rules of priority under the UCC are clearly stated in Title 6 of the Delaware Code.  Perfected security interests have priority over unperfected interests, and perfected interests have priority based upon the time of filing and perfection.  (*See* Del. Code Ann. tit. 6, § 9-322.)  Moreover, a judicial lien creditor (such as a debtor in possession) has rights superior to a holder of an unperfected security interest.  (*See* Del. Code Ann. tit. 6, § 9-317(a).)  To the extent that there are secured parties with perfected security interests, they each have priority to the goods supplied and/or delivered by Vendor under the Agreement, as well as all proceeds from sales of such goods.  This includes Debtors or lenders that have perfected interests in all of the Debtors' inventory—such as Bank of America, N.A. and Wells Fargo Bank, National Association.  In this regard, the goods shipped and/or delivered to Debtors by Vendor prepetition are subject to claims by the buyer's creditors while in the buyer's possession as "sale or return" goods delivered for resale.  (*See* Del. Code Ann. tit. 6, § 2-326(1)-(2).)

20.    Vendor did not perfect any prepetition security interest it may have had under state law in goods shipped or delivered to Debtors prepetition, and does not qualify for any other exception.  The failure to perfect any security interest that Vendor may have had by operation of law in the goods shipped and/or delivered to Debtors is fatal under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), as Debtors possess the right to avoid any liens or interest that are junior to a hypothetical lien creditor as of the Petition Date.  (11 U.S.C. §§ 544(a) and 1107(a).)  At the time of the subject bankruptcy, all legal and equitable interests of Debtors in property became property of the bankruptcy estate pursuant to section 541 of the Bankruptcy Code.  (11 U.S.C. § 541.)  In this respect, no knowledge of a prepetition debtor regarding the consignments is imputed to the Debtors.  (*See* 11 U.S.C. § 544.)  As debtors and debtors in possession under the Bankruptcy Code, Debtors are authorized to exercise a

7

trustee's avoidance powers pursuant to section 544 of the Bankruptcy Code.  Therefore, Debtors

may exercise the trustee's avoidance powers, declare Vendor to be without a perfected secured

interest in the subject Goods and Property (each as defined below), and continue to sell the

Goods in the regular course of Debtors' business.

> **D.**    **Debtors Are Permitted To Continue To Sell The Goods In The Regular Course Of Business.**

21.     Section 363(c) of the Bankruptcy Code authorizes the trustee (or in this case the

Debtors) to sell property of the estate in the ordinary course of business without notice or a

hearing.  Pursuant to section 363(f) of the Bankruptcy Code, Debtors may sell property free and

clear of any interest in such property of an entity other than the estate if, *inter alia,* any one of the

following conditions is satisfied:  (1) applicable nonbankruptcy law permits the sale of such

property free and clear of such interest; *or* (2) such interest is in *bona fide* dispute; *or* (3) such

entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of

such interest.  Although only one of these criteria is necessary to permit Debtors to sell the goods

supplied and/or delivered by Vendor to Debtors prepetition, here there exist three separate and

independent bases for such a sale.

22.     First, applicable non-bankruptcy law permits such a sale.  Pursuant to UCC § 9-

319(a), while the subject goods are in the possession of the Debtors in their capacity as

consignee, the Debtors are "deemed to have rights and title to the goods **identical to those the**

**consignor had or had power to transfer**."  (Del. Code Ann. tit. 6, § 9-319(a) (entitled

"Consignee has consignor's rights") (emphasis added).)  The exception in Del. Code Ann. tit. 6,

§ 9-319(b) does not apply because there is no perfected security interest held by Vendor as set

forth above.  Thus, Debtors are cloaked with the requisite rights and title to continue to sell the

goods shipped and delivered to them by Vendor in the regular course of business—without the

need for consent by the Vendor holding an unperfected and thus avoidable security interest in the goods. Thus, section 363(f)(1) of the Bankruptcy Code permits the Debtors to continue to sell the goods free and clear of any interests therein.

23.     Second, at a minimum, the facts and applicable law demonstrate that a *bona fide* dispute exists concerning the interests in the Goods as reflected in this Complaint, pursuant to the Court's ruling in *In Re DVI, Inc.*, 306 B.R. 496 (Bankr. D. Del. 2004) and its progeny. Thus, section 363(f)(4) of the Bankruptcy Code permits Debtors to continue to sell the goods free and clear of any interests therein.

24.     Finally, because of the unperfected nature of Vendor's security interest in the subject goods shipped and/or delivered to Debtors prepetition, Vendor could be compelled to accept a monetary satisfaction on account of such interest. Thus, section 363(f)(5) of the Bankruptcy Code permits Debtors to continue to sell the goods free and clear of any interests therein.

25.     Refusing to allow the Debtors to sell the subject goods would have a serious detrimental effect on Debtors. It could, in essence, force Debtors to shutter their more than 425 stores, terminate the employment of more than 8,000 individuals, and force Debtors out of business, thereby precluding any and all potential options for reorganization or external investment. It also would have a devastating impact on all creditors.

26.     Approximately $85,288 of goods has been shipped and delivered by Vendor to Plaintiffs prepetition, which presently are the subject of the Agreement and which Plaintiffs intend to continue to sell in the regular course of their business as they have in the past.

## FIRST COUNT

### (Declaratory Judgment Against Vendor)

27.     Plaintiffs repeat and re-allege paragraphs 1 through 26 above.

28.    A real and existing controversy exists between Plaintiffs and Vendor concerning:

(a)    Whether the Vendor's assertion of title is limited in effect to a reservation of a security interest by operation of law, including pursuant to Del. Code Ann. tit. 6, § 2-401;

(b)    Whether the Vendor has an unperfected and therefore avoidable security interest in the goods shipped or delivered by Vendor to Plaintiffs prepetition (the "Goods") and the proceeds therefrom (collectively with the Goods, the "Property");

(c)    Whether any security interest held by the Vendor in the Goods or the Property is entitled to priority as against any other competing security interests;

(d)    Whether Vendor instead holds no more than a general unsecured claim against Debtors in the Goods and Property;

(e)    Whether the Goods are property of Debtors' estates pursuant to section 544(a) of the Bankruptcy Code;

(f)    Whether Debtors hold an interest senior in right and priority to that of Vendor in the Goods and Property by virtue of sections 541, 544 and 1107(a) of the Bankruptcy Code, including but not limited to the right to exercise the trustee's avoidance powers against Vendor;

(g)    Whether Debtors can avoid Vendor's security interest in the Goods, including pursuant to sections 541, 544(a) and 1107(a) of the Bankruptcy Code;

(h)    Whether other existing secured creditors such as the lenders of Debtors hold valid, perfected, unavoidable, and senior interests in the Goods and Property;

(i)      Whether Vendor is entitled to return of the Goods, including pursuant to relief from the automatic stay otherwise imposed by section 362(d) of the Bankruptcy Code;

(j)      Whether Debtors are entitled to continue to sell the Goods in the regular course of their business; and

(k)      Whether Vendor is entitled any proceeds generated from the sale of the Goods.

29.      This existing controversy is substantial and justifiable because it affects the parties in a concrete manner so as to provide the factual predicate for reasoned adjudication.  The controversy is also of sufficient immediacy to warrant the issuance of a declaratory judgment.  A declaratory judgment will conclusively clarify the legal rights and obligations of the parties, and will be of practical assistance to them.  The judgment sought will terminate the controversy and remove any uncertainty concerning their respective rights and obligations.

30.      Accordingly, Debtors seek an order declaring that:

(a)      Vendor's assertion of title is limited in effect to a reservation of a security interest by operation of law, including pursuant to Del. Code Ann. tit. 6, § 2-401;

(b)       Vendor does not have a perfected and otherwise unavoidable security interest in the Goods or the Property;

(c)      Vendor does not have a perfected and senior security interest in the Goods or the Property;

(d)      Vendor instead holds no more than a general unsecured claim against Debtors in the Goods and Property;

(e)     The Goods are property of Debtors' estates pursuant to section 544(a) of the Bankruptcy Code;

(f)     Debtors hold an interest senior in right and priority to that of the Vendor in the Goods and Property by virtue of sections 541 and 544 of the Bankruptcy Code, including the right to exercise the trustee's avoidance powers against Vendor;

(g)     Vendor's unperfected security interest in the Goods is avoidable, including pursuant to section 544(a) of the Bankruptcy Code and UCC § 9-317 (Del. Code Ann. tit. 6, § 9-317(a)), and therefore is avoided by the Debtors;

(h)     Other existing secured creditors such as the lenders of Debtors hold valid, perfected, unavoidable, and senior interests in the Goods and Property;

(i)     The Goods are property of Debtors' estates pursuant to section 541 of the Bankruptcy Code, and Vendor is not entitled to return of the Goods, including pursuant to relief from the automatic stay imposed by section 362(d) of the Bankruptcy Code in this respect;

(j)     Debtors are entitled to continue to sell the Goods in the regular course of their business; and

(k)     Vendor is not entitled to proceeds generated from the sale of the Goods except as a general unsecured creditor.

## SECOND COUNT

### (Injunctive Relief Against Vendor)

31.     Plaintiffs repeat and re-allege paragraphs 1 through 30 above.

32.     Unless Vendor is preliminarily and permanently enjoined from (a) inhibiting or preventing Debtors from selling the Goods in the regular course of their business, and/or (b) taking action in furtherance of a position that it has any unavoidable, perfected secured rights in

the subject Goods and Property, Vendor will cause imminent and irreparable harm to Debtors

and their 8,000 plus employees, as well as Debtors' creditors.

33.    There is no other adequate remedy at law to address and rectify the current

situation absent such relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an order as follows:

1.    As to the **First Count for Declaratory Judgment** against Vendor, declaring that:

(a)    Vendor's assertion of title is limited in effect to a reservation of a security

interest by operation of law, including pursuant to Del. Code Ann. tit. 6, § 2-401;

(b)     Vendor does not have a perfected and otherwise unavoidable security

interest in the Goods or the Property;

(c)    Vendor does not have a perfected and senior security interest in the Goods

or the Property;

(d)    Vendor instead holds no more than a general unsecured claim against the

Debtors in the Goods and Property;

(e)    The Goods are property of Debtors' estates pursuant to section 544(a) of

the Bankruptcy Code;

(f)    Debtors hold an interest senior in right and priority to that of Vendor in the

Goods and Property by virtue of sections 541 and 544 of the Bankruptcy Code, including

the right to exercise the trustee's avoidance powers against Vendor;

(g)    Vendor's unperfected security interest in the Goods is avoidable, including

pursuant to section 544(a) of the Bankruptcy Code and UCC § 9-317 (Del. Code Ann. tit.

6, § 9-317(a)), and is therefore avoided by Debtors;

(h)     Other existing secured creditors such as the lenders of Debtors hold valid, perfected, unavoidable, and senior interests in the Goods and Property;

(i)     The Goods are property of Debtors' estates pursuant to section 541 of the Bankruptcy Code, and Vendor is not entitled to return of the Goods, including pursuant to relief from the automatic stay otherwise imposed by section 362(d) of the Bankruptcy Code in this respect;

(j)     Debtors are entitled to continue to sell the Goods in the regular course of their business; and

(k)     Vendor is not entitled any proceeds generated from the sale of the Goods except as a general unsecured creditor.

2.     As to the **Second Count for Injunctive Relief against Vendor**, ordering that:

(a)     Vendor is prohibited from inhibiting or preventing Debtors from selling the Goods in the regular course of their business; and

(b)     Vendor is prohibited from taking action in furtherance of a position that it has any unavoidable, perfected secured rights in the subject Goods and Property.

3.     All damages recoverable at law or in equity.

4.     Pre- and post-judgment interest as allowed by law.

5.     Awarding Plaintiffs the costs and disbursements of this action, and Plaintiffs' attorneys' and experts' fees.

6.     Granting such other and further relief as this Court may deem to be just and proper.

Dated: March 15, 2016
      Wilmington, Delaware

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
David A. Battaglia
Sabina Jacobs
333 S. Grand Ave.
Los Angeles, CA 90071
Telephone:  (213) 229-7000
Facsimile:  (213) 229-6000

- and -

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ Michael S. Neiburg
Michael R. Nestor (No. 3526)
Michael S. Neiburg (No. 5275)
Andrew L. Magaziner (No. 5426)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

*Proposed Counsel to Debtors Sports Authority Holdings, Inc., Slap Shot Holdings, Corp., The Sports Authority, Inc., TSA Stores, Inc., TSA Gift Card, Inc., TSA Ponce, Inc. and TSA Caribe, Inc.*